IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 08-cr-00365-MSK

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1. **MICHAEL ARTHUR GRIGGS**,
2. **CHARLES HOMER "CHIP" SHARP**,
3. **JUSTIN SHANE BLACKBURN**,
4. **MARK R. TROUDT**,
5. JASON ALAN CAIN,
6. BRETT DAVID HARDING,
7. PETER T. JENNINGS,
8. **MATTHEW KASKEL**,
9. GARLAND SCOTT RISDON, and
10. **DANIEL JOHN TRAVERS**,

       Defendants,

## MEMORANDUM OPINION ON MOTIONS FOR SEPARATE TRIALS

**THIS MATTER** comes before the Court on the motions by all Defendants[1] requesting a separate trial from one or more codefendants.[2] Having considered the pleadings and briefing, as

---

[1] The Defendants whose charges are proceeding to trial are listed in bold face type above.

[2] Specifically, the motions at issue are the following:
1.     The Motion to Sever (#**366**) filed by Mssrs. Griggs, Sharp, Blackburn, and Troudt, the Government's Response (#**447**), the Defendants' Supplement (#**1239**), Mr. Griggs' Trial Brief (#**1238**) and Mr. Sharp's Trial Brief (#**1242**), and the Government's Response (#**1253**) to the Trial Brief arguments;
2.     The Motion to Sever or, In the Alternative, to Exclude Co-Defendant Statements (# **381**) filed by Mr. Kaskel, the Government's Response (#**446**), and Mr. Kaskel's Offer of Proof for Severance Hearing (#**1222**); and
3.     The Motion for Severance (#**1198**) filed by Mr. Travers, the Government's

well as the arguments presented at a June 7, 2012 hearing, the Court finds and concludes as follows.

## I. Background

This case concerns an alleged fraudulent scheme perpetrated by the owners and employees of Disaster Restoration, Inc. ("DRI"). DRI was in the business of repairing and restoring property damaged by fire, flood, or other disasters for the benefit of property owners and their insurers. DRI retained subcontractors to perform the restoration work and acted as a general contractor for each project. DRI received compensation for its work from the property owners' insurance companies. It submitted either the estimates or the invoices from the subcontractors to the insurance companies for reimbursement along with charges of ten percent of the subcontractors' charges as an overhead fee and another ten percent as profit.

In a previous order, the Court made the following preliminary determinations regarding what the Government's evidence (if unrebutted) would show regarding each Defendant's role[3] in the conspiracy:

> If the proffered evidence were presented at trial and was unrebutted, it would show all of the named Defendants were employees of DRI during some or all of the period in which the alleged fraud occurred (2003 to 2006). All were involved in the bidding and/or billing process at DRI. All attended weekly meetings where the DRI's business practice was openly discussed. All were aware of and participated in the bidding/billing process that is the subject of the indictment. In particular, Defendant

---

Response (#**1203**), and Mr. Travers' Reply (#**1252**).

[3]Several Defendants have entered guilty pleas pursuant to written plea agreement. This Order only incidentally addresses those Defendants. Those who have entered pleas of not guilty are designated by bold face type in the caption. Their motions are the subject of this ruling. They are referred to collectively as the "Defendants" or "named Defendants".

> Griggs was the owner and CEO of DRI. Defendant Sharp was the
> COO of DRI. Defendants Blackburn and Troudt were estimators
> who dealt directly with subcontractors and their bids. Defendant
> Kaskel was a project manager. Defendant Travers was the
> Supervisor of DRI's Emergency Section. Both dealt with
> subcontractors. At the direction of Defendants Griggs and Sharp,
> Defendants Blackburn, Troudt, Cain, Harding, Jennings, Kaskel,
> Risdon and Travers and non- indicted coconspirator Christopher
> Wattier instructed subcontractors working for DRI to inflate bids.
> Defendants Sharp, Blackburn, Troudt, Cain, Harding, Jennings,
> Kaskel, Risdon and Travers also instructed subcontractors to
> provide DRI with duplicate bids in differing amounts. Defendants
> Blackburn, Troudt, Cain and Harding submitted false and inflated
> subcontractor bids to insurance companies.

Feb. 27, 2012 Order Regarding Government's James Proffer (#1119), at 6.

Based on the motions, supplemental briefing, and oral arguments, the Court understands the parties to make the following assertions regarding why they should be tried in separate proceedings:

1. Mr. Kaskel seeks to be tried separately because he will be prejudiced, in a manner than cannot be cured by other means, by the introduction of evidence relating to events occurring after he left DRI[4] and because his Confrontation Clause rights are jeopardized by out-of-court statements made by and offered as evidence against non-testifying codefendants.

2. Mssrs. Griggs, Sharp, and Blackburn[5] seek to be tried separately from the other Defendants because they have defenses in conflict with their codefendants and

---

[4] Although Mr. Troudt did not make this argument in his original motion, it applies to equal force to him and he appears to have adopted it in supplemental briefing and at the hearing.

[5] Mr. Troudt originally joined this motion but now appears to argue that he should be tried separately from Mssrs. Griggs, Sharp, and Blackburn.

because their Confrontation Clause rights are jeopardized by out-of-court statements made by and offered as evidence against the other non-testifying codefendants.

3. Mr. Travers seeks a separate trial from the remaining Defendants because he is less culpable than the decisionmakers in the alleged scheme and will be prejudiced by evidence introduced against them and because his defense is in conflict with theirs.

## II. Analysis

**A.  Applicable Law**

Rule 8 of the Federal Rules of Criminal Procedure generally governs the joinder of defendants for the purposes of trial:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

However, the Court has the power under Fed. R. Crim. P. 14(a) to permit separate trials of defendants where a joint trial will cause prejudice.

Severance is a matter of discretion, not a matter of right. *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir. 1993). There is a general preference, particularly in a conspiracy

4

case, that persons charged together be tried together. *United States v. Ray*, 370 F.3d 1039, 1045 (10th Cir. 2004). However, a "severance should be granted when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.' " *United States v. Sarracino*, 340 F.3d 1148, 1165 (10th Cir. 2003) (citation omitted). There is a risk of prejudice when evidence that the jury should not consider against one defendant is admitted against a codefendant, or when a codefendant's wrongdoing could erroneously lead a jury to conclude that a defendant is guilty, particularly where the case is complex and the defendants have markedly different degrees of culpability. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). But if there is prejudice, severance is not automatically required; to the contrary, the Court has broad discretion to tailor an appropriate remedy to address it. *Id.*

A common basis for seeking severance is the concern that evidence presented against a more culpable codefendant will prejudice a less culpable codefendant - a spillover effect. Case law in the Tenth Circuit consistently holds that such risk does not necessarily require severance. Rather, it can be addressed by cautionary instructions. *See: United States v. Iiland*, 254 F.3d 1264, 1270 (10th Cir. 2001). *United States v. Hutchinson*, 573 F.3d 1011, 1026 (10th Cir. 2009) (limiting instructions are "ordinarily sufficient to cure potential prejudice.") (quoting *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996)).

A conflict of interest among codefendants, or antagonistic defenses, may justify separate trials under certain circumstances. Defenses are mutually antagonistic if "the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Linn*, 31 F.3d 987, 992 (10th

5

Cir.1994). The Tenth Circuit has set forth a three-step process for considering a motion to sever where it is asserted that the defendants have antagonistic defenses . First, the Court must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007) (citing *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir.1989)). Second, because "[m]utually antagonistic defenses are not prejudicial *per se*," a defendant must further show "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. (citing *Zafiro*). Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id*. (citing *Peveto*, 881 F.2d at 857).

Violation a specific trial right may be established by showing that a non-testifying codefendant's out-of-court statement inculpates another codefendant in a manner that cannot be remedied other than by separate trials. Under *Bruton v. United States,* 391 U.S. 123 (1968), if a non-testifying codefendant's statement admissible against one codefendant contains inculpatory information about another, that defendant's Confrontation Clause rights are implicated.

To create a *Bruton* problem, the statement at issue must be *directly* inculpatory of the defendant, not merely "inferentially incriminating." *United States v. Rahseparian*, 231 F.3d 1267, 1277 (10th Cir. 2000). Even then, *Bruton* problems can be eliminated if the non-testifying codefendant's statement is redacted to remove all reference to the defendant and the jury is given a proper limiting instruction. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). To be sufficient, the redaction must not implicate the defendant. *Gray v. Maryland*, 523 U.S. 185 (1998)

(redactions that simply left large blanks or the word "deleted" clearly implicated defendant). "[W]here a defendant's name is replaced with a neutral pronoun or phrase there is no *Bruton* violation, providing that the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury." *United States v. Verduzco-Martinez*, 186 F.3d 1208 (10th Cir. 1999).

**B.      Mr. Kaskel's Motion - Withdrawal from the Alleged Conspiracy**

Mr. Kaskel argues that he will be prejudiced by the significant amount of evidence relating to events occurring after his withdrawal from the conspiracy[6] which the Government concedes cannot be used against him.[7] The parties agree that there is a substantial amount of evidence falling within this category. For example, 31 of the 52 restoration jobs that underlie the Indictment occurred after March 2005, when Mr. Kaskel left DRI. Similarly, approximately 94 statements of co-conspirators that will be used as evidence were made after his withdrawal; moreover, the Government in unable to fix the time of another 87 statements.

The Government anticipates using all of this evidence against other Defendants over the course of an eight-week trial. Mr. Kaskel argues that even with cautionary instructions, there is a risk that the jury may not be able to sort the "wheat from the chaff" due the length of the trial and the volume of the evidence to be presented. Mr. Troudt adopts this argument as well.

---

[6]Evidence from the *James* proffer and hearing shows that Mr. Kaskel's employment at DRI terminated in March 2005. He also contends that he withdrew from the conspiracy, if it existed, on February 16, 2005 by renouncing the double bid/invoice practice. Similarly, Mr. Troudt's employment at DRI ended in September 2005, and in December 2005, he implicated himself and others in statements to National Insurance Crime Bureau ("NICB") investigators.

[7]Many of these arguments are contained in his Motion to Reconsider Ruling on Motions Concerning Co-conspirator Statements (# **1125**) and Offer of Proof for Severance Hearing (#**1222**).

7

Because a spillover effect, such as complained of by these Defendants, often can be remedied with appropriate cautionary instructions, the Court solicited the parties' views regarding measures, short of a severance, that could ameliorate the potential for jury confusion. These included introductory instructions with regard to the need to determine each claim against each Defendant followed by instructions as to the effect of withdrawal from a conspiracy and when Mr. Kaskel and Mr. Troudt left DRI employment. In addition, the Government offered to present the testimony of each witness in chronological fashion so that an instruction could be given to jurors during the course of each witness' testimony when the evidence is no longer applicable to Mr. Kaskel and Mr. Troudt, *i.e.*, when they ceased to be associated with DRI.

If these combination of measures were sufficient to remind the jury that some evidence should not be considered with regard to charges against Mr. Kaskel and Mr. Troudt, they unfortunately jeopardize the other Defendants' right to a fair trial. Counsel for Mr. Blackburn astutely observes that repeated emphasis on the evidence that cannot be considered as against Mr. Kaskel and Mr. Troudt based on allegations that they "withdrew from the conspiracy" could improperly suggest the existence of a conspiracy. Such instructions could also create inordinate distinctions as to culpability between Mr. Kaskel and Mr. Troudt, on one hand, and the remaining Defendants, on the other.

There appears to be no clear solution, short of separate trials, that preserves all Defendants' right to a fair trial. Therefore, Mr. Kaskel and Mr. Troudt[8] will be tried separately

---

[8]Mr. Kaskel also argued that introduction of Mr. Troudt's out-of-court statement in a joint trial will violate Mr. Kaskel's Confrontation Clause rights if Mr. Troudt does not testify. Because this issue was not specifically addressed at the hearing and was raised before this Court's determination regarding the severance of Mr. Kaskel and Mr. Troudt from the remaining Defendants, the Court makes no ruling in this regard. This order only concerns whether Mr.

from Mr. Griggs, Mr. Sharp, Mr. Blackburn, and Mr. Travers.

C. **Remaining Motions[9] - Antagonist Defenses, Differing Culpability**

The remaining Defendants contend that the owners and supervisors (Mr. Griggs, Mr. Sharp, Mr. Blackburn) should be tried separately from any employee Defendants (Mr. Travers) because they have antagonistic defenses. Similarly, Mr. Travers argues that because he did not have decisionmaking authority and is charged with significantly fewer counts than the owner/supervisors, he should be tried separately from them because of the risk of prejudice from spillover evidence.

Although it is not known with any certainty what defenses will be asserted, it appears that all Defendants will argue that the Government cannot prove that they had the requisite *mens rea* for the charges brought. The owner/supervisors intend to defend, in part, by asserting that their conduct was not illegal, or that they did not know that it was illegal. Mr. Travers intends to defend, in part, that he was only following instructions, and if what he was doing was illegal, that he did not know that.

These are not obviously antagonistic defenses. A jury could believe both defenses and acquit both groups– in other words, the jury could believe both that Mr. Travers was merely following instructions with no knowledge of what was occurring (and therefore was not culpable) and that the owner/supervisors were also not culpable because their conduct was not illegal and/or they had no intent to defraud the insurers. Defendants who merely point the finger

---

Kaskel and Mr. Troudt should be tried separately from the remaining Defendants, not whether they should be tried separately from each other.

[9]To the extent that these Defendants' arguments concerned joint trial with Mr. Kaskel or Mr. Troudt, those arguments are now moot and will not be addressed.

at the other defendants do not necessarily have mutually antagonistic defenses. *Linn,* 31 F.3d at 992. Thus, there is no need to sever the trial of Mr. Travers from that of Mssrs. Griggs, Blackburn and Sharp for this reason.

Mr. Travers also argues that he may be subject to the spillover effect of the evidence about the actions of Mssrs. Griggs, Blackburn and Sharp, who were policy makers for DRI. He argues that he had no authority to set pricing, alter invoices, or communicate with the insurance companies, and that he was involved in only a few of the transactions underlying the charges.

Mr. Travers is a low level employee of DRI and is charged with fewer mail fraud counts than the owner/supervisor Defendants. However, a defendant in such a situation is not necessarily prejudiced when tried with codefendants are allegedly more culpable. *See Hutchinson*, 573 F.3d at 1030-31. The differential between the roles of the Defendants may inure to his benefit. However, if there is risk of prejudice it is appropriately addressed by cautionary instructions to the jury reminding them to determine each charge against each Defendant. Unlike the situation presented with Mr. Kaskel's and Mr. Troudt, there is no showing that the necessary instructions will be so numerous or repetitive as to create prejudice as to the other Defendants.

Moreover, Mr. Travers could not be tried with Mr. Kaskel and Mr. Troudt because of the evidentiary concerns that mandate separate trials for them. Thus, to sever Mr. Travers trial from that of the owner/supervisors would result in at least three separate trials. The potential prejudice Mr. Travers complains of does not justify the expense and inconvenience of a separate trial for charges against him.

**D.      Confrontation Clause/*Bruton* issues**

Mr. Griggs, Mr. Sharp and Mr. Blackburn also contend that *Bruton* issues require severance of their trials from those of codefendants. At issue are out-of-court statements made by Mr. Travers. Mr. Travers was interviewed by a NICB investigator and a postal inspector on April 4, 2008; his statements appear in a memorandum summarizing the interview. **#1242-4**. The Government intends to use this statement as evidence against Mr. Travers. The issue is whether this statement implicates the other Defendants such that a cautionary instruction to the jury to consider the statements only against Mr. Travers would be insufficient to cure any potential prejudice.

The Government states that it will redact statements of non-testifying codefendants so as to be in compliance with *Bruton* and its progeny. Mr. Travers' statement has been redacted to remove direct references to other codefendants. However, Mr. Griggs and Mr. Sharp argue that the redactions are insufficient because their individual names are substituted with references to "DRI" or "DRI policies" or "practices at DRI".[10] Mr Griggs and Mr. Sharp fear that the jury will believe that they and DRI are synonymous, and thus the statement implicates them, despite redaction.

The Court finds that the redactions are sufficient to address the *Bruton* issue. At the hearing the parties were given an opportunity to make a proffer as to the evidence that would be presented with regard to Mr. Griggs' and Mr. Sharp's role at DRI and with specific evidence with regard to "DRI policies or practices." The evidence will show that DRI is a functioning

---

[10]In their trial briefs, Griggs and Sharp also argue that admission of the statements by non-testifying codefendants also violates the Confrontation Clause pursuant to *Crawford v. Washington,* 541 U.S. 35 (2004). As noted at the hearing, the Government does not intend to offer these statements as evidence against anyone other than the Defendant who made the statement. Although *Crawford* does not require further severance of trial, the Defendants may raise *Crawford* concerns as appropriate.

corporation with a Board of Directors and officers, and that both Mr. Griggs and Mr. Sharp own DRI stock. No evidence will be offered to establish that DRI is the alter-ego of its shareholders. Instead, the Government intends to prove the charges against Mr. Griggs and Mr. Sharp based on their direction and implementation of particular practices and policies. Simply because Mr. Griggs and Mr. Sharp own stock (even a controlling number of shares) in DRI, there is no legal presumption that references to DRI or its policies or practices are impliedly references to Mr. Griggs or Mr. Sharp. Should there be continuing concern in that regard, an appropriate jury instruction can be proffered.

**E.     Order of Trials**

The currently-set trial anticipated all charges against all Defendants. It is set for 6-8 weeks beginning July 2, 2012. In the event of severance of trials, the Defendants prefer to proceed with the charges against Mssrs. Griggs, Blackburn and Sharpe before trial of the charges against the remaining Defendants. The Government has no preference. To take advantage of the time currently set for trial and in anticipation of a longer trial for the charges against Mssrs. Griggs, Blackburn, Sharpe and Travers than for those against Mssrs. Kaskel and Troudt, the trial beginning July 2, 2012, will be used for charges against Mr. Griggs, Mr. Sharp, Mr. Blackburn, and Mr. Travers.

Trial on the charges against Mr. Kaskel and Mr. Troudt will proceed thereafter. In their motions for severance, each included arguments suggesting that they cannot be tried together. The Court treats such requests as pending motions for separate trials. Counsel for the Government, Mr. Kaskel and Mr. Troudt shall contact this Court's chambers within ten days of

the issuance of this memorandum opinion to set a law and motion hearing to address trial matters for these Defendants, including scheduling, Speedy Trial issues, and further severance requests.

Dated this 12th day of June, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge